Ms. Clare is the petitioner, Ms. Rylander is the respondent, and Ms. Jones is the interviewee. Ms. Rylander is the petitioner, Ms. Jones is the respondent, and Ms. Jones is the interviewee. Ms. Rylander is the interviewee, Yes, Your Honor. Because what the Commission said in that order, and again, just quoting from the order itself, the refund effective date, the effective date for a change in the allocation of costs, i.e., ordering a different allocation of costs among customers, which is what was at issue in the formal challenge, will be determined in the complaint proceeding based on the requirements of Section 206 as applicable. Section 206 as applicable to a formula rate challenge is limited to the cost input to the formula. That's all that was at issue. That is all that was raised in the formal challenge. That was the breadth of the Section 206 proceeding. The Commission never instituted a Section 206 proceeding into the formula rate. It never set a refund effective date, never provided notice of a 206 investigation. Continuing. FERC has argued that... Just so that we're clear, if we agree with that contention, what do we do? Vacate the Commission's orders, Your Honor. All of them? All of them. Because the Commission, that is the initial order on reserved issues where the Commission decided,  So if you reject them all, you do not get the costs excluded, then? The costs would not be excluded. We would have to, of course, go back to the Commission. The Commission on remand would have to decide what to do. The way that the tariff is... So on remand, it could follow the 206, but you don't think it's yet filed. And in the meantime, you would not be collecting, you would not be having the costs removed. That's right, Your Honor. That's right. It's the day in court that we were never, before FERC, that we were never allowed to have on whether or not the costs should be allocated to wholesale customers at all. And you didn't make an argument below that it should not be allocated to wholesale customers at all? I thought you did. We did, Your Honor. So what do you mean you didn't get a day in court on the point? Because the Commission, in its order on reserved issue, determined that there should be no allocation of costs to North Carolina customers, and all Virginia customers shall pay, we never were allowed to address that issue in the record below. And then... Wait, I thought you did address that. We raised it in our complaint. We never had... The Commission didn't rule on it. Once the Commission ruled, did you have an opportunity in a re-hearing to make the argument? We did. And did you make the argument? We made the argument that no Virginia customer should have to pay, and the Commission shouldn't have split the bill. So what do you mean you didn't get a chance below to make the argument? We provided evidence of the lack of benefits that the Commission never addressed. The Commission did address it. I appreciate they didn't address it to your satisfaction, but you can't say they didn't address it. They didn't, Your Honor. So on the allocation of costs when I said we didn't get our day in court, we put in evidence and demonstrated below that there was no benefit to Virginia wholesale customers. And their response was that this was done at the instance of the State of Virginia on its representation, that that would be to the benefit of its citizens and companies. I appreciate you don't agree with that, but they did address the question. Your Honor, I would submit that addressing the question, making a bare conclusion because Virginia... Okay, so that's your argument that they failed because they're arbitrary and capricious or substantial evidence. I don't understand the argument that you didn't get a chance to make your point. The argument that we weren't allowed to make was about allocation of cost to Virginia customers. So if I could continue, in the Commission's hearing order, the Commission established a hearing to determine the appropriate amount of cost at issue as well as the appropriate assignment or allocation of those costs. We put in evidence in the case before a presiding administrative law judge, put in evidence on that issue, and then the Commission affirmed an initial decision where the presiding judge said, never mind the hearing, never mind the order. The only thing that was at issue and the only thing he was allowed to address was the amount of the cost, not the allocation of those costs. So we did not have a ruling... That was before the ALJ. That was, Your Honor. But did you make the argument originally to FERC for its initial order? The argument that there were no benefits to wholesale customers? Yes. We did, Your Honor. Okay, so then, again, I'm not following. You made the argument below. We did. They didn't let you make it before the ALJ because the ALJ, in FERC's view, had already been decided. But you made it to FERC. So when you say, we send this all back, you don't get the cost reduced during the entire period, and you get to remake the exact same argument you made before. What's the benefit to you? We would first, Your Honor, because what the Commission got wrong in not establishing in Section 206 this is not the part of the decision that dealt with the allocation of benefits, but establishing instrument and order directing Dominion to split its zone in the tariff between North Carolina and Virginia. That issue was not raised in our initial complaint. It wasn't raised in our brief. The Commission... So you didn't argue that they should not be able to allocate the cost only to Virginia? We did argue that. We did, on reply. So the first time it came up was... So it was argued below. I'm still not understanding what benefit you think you will get by a remand in which FERC says, we addressed all these questions before. We'll now address them again and reach the same conclusion we did the last time. We get at least, Your Honor, the benefit of the agency having complied with the Federal Power Act. It's what the agency has to do. FERC did not follow Section 206 of the Federal Power Act in changing... On your reading of the words cost allocation. No, Your Honor. I'm still on the point that Judge Harlan was asking about with respect to the Commission instituting a Section 206, not having instituted a Section 206 proceeding into the formula rate itself, changes to the formula rate. Yes, but that sounds like an issue that we talked about earlier. It is. Where your position turns, as I understand it, on the proposition that the words cost allocation in that order do not include the allocation of costs as between Virginia and North Carolina customers. That's correct, Your Honor. The Commission did not allow, within the scope of its hearing, the Commission did not address the issue of the allocation of costs to Virginia customers because it agreed with the ALJ's determination that in setting the scope of the hearing, although the Commission said a hearing will be had with respect to the amount of costs and the appropriate assignment of those costs, despite the fact that the Commission said both amount of costs and assignment of costs... So I assume we disagree with your reading of what FERC said. Do you have an argument that they didn't consider the allocation of costs at all before the ALJ proceeding? FERC's position is they considered allocation issue first and then the actual amounts later. In the decision in which they considered allocation, they recite the fact that you argued against that allocation. Is that false? No. The Commission, in saying it addressed the allocation, what the Commission said in the order on reserve issue was Virginia made decisions with respect to underground. Virginia Commission and the Virginia legislature, excuse me, made these decisions directing underground. Therefore, it follows that North Carolina's customers do not benefit and Virginia customers do. The argument, of course, is that that is insufficient... I'm trying to tease out the difference between the discussion you had with Judge Williams on whether this is sufficiently a 206 proceeding. That's one argument you have. Then you have this separate argument that they misunderstood their own order. Assume you're wrong about that. I want you to assume for purposes of this discussion that you're wrong about that. Then what? Even if the Commission, even if the Court agrees with the Commission in saying amount and allocation really only meant amount and allocation wasn't before the Commission, FERC still has an obligation to demonstrate that costs are roughly commensurate with the benefits received, and there's no demonstration of that in this record. That's a substantial evidence question. Now my question remains procedural, which is what did you lose by, if you think this wasn't a complete 206 proceeding, what was done that wasn't consistent with 206? 206 can be done on the briefs if they find no material question of fact, right? On the 206, what was properly before the Commission and what FERC could have done is ruled on the cost input into the formula. That's all. It could not have... That's your reading. Yes, Your Honor. The cost allocation in the May 2010 order. That's my reading based on the Federal Power Act, Your Honor, that the only thing... Yeah, but you aren't saying the Commission had no authority to inquire into proper cost allocation. No, we are saying... So how does it have to do with the Federal Power Act? The Commission did not have the authority to direct the... So there are two separate arguments, as Chief Judge Garland said. One is whether or not the Commission could order an investigation into the formula itself. Couldn't do that because it didn't establish a Section 206 proceeding. The second... But that's on your reading of the 2010 order. And the Federal Power Act, Your Honor. How does the Federal Power Act prevent the 2010 order from calling for inquiry into cost allocation? Where is it that it's useless? Where the Commission is going to institute a Section 206 investigation. Where the Commission wants to look at the formula rate itself and not just the cost input to the rate. The Commission itself has said when it intends to look at the formula rate itself, there must be a Section 206 proceeding initiated into the formula, not the cost input. So the magic words that are missing is formula. Even though what everyone agrees is involved is mentioned, cost allocation. I would submit the magic words are more than that. The magic words that are missing, or the magic actions that are missing, are initiation of an investigation under 206, which requires notice by FERC of institution of an investigation and a refund effective date. FERC did not do those. Those are statutory requirements, not my wishes of what the Commission... So the defect of the 2010 order is failure to specify a refund effective date? Failure to institute a Section 206 proceeding. The words, and I repeat that your brief never mentions this, the words seem to go against you there. It says Section 206. It says Section 206, the effective date, will be addressed in the pending proceeding under Section 206 as applicable, which meant the Commission was referring back to the 206 proceeding it then had pending before it, limited only to the cost inputs into the rate, never having instituted an investigation into the formula itself. The Commission specifically said in that order as applicable in the pending case, which only addressed the cost inputs, not the formula itself. What's the difference between the formula and the cost? The Commission has explained that the cost inputs into a utility file, the formula rate, there are two different types, a cost-based rate or a formula-based rate. Where a cost-based rate is submitted, the actual costs are there, and there's a rate that the Commission can approve. For a formula-based rate, a utility submits what's essentially a blank template that has each account, each line item, and it's not populated with any cost or rate information, none of the numbers. The utility, the Commission, approves that formula, and that formula itself is the rate. That's what the Commission has said. The formula itself is the file rate. Then the utility each year makes what's called an annual update, where they populate that formula based on estimates of the four-year cost, populate that formula with costs, and a rate is generated out of that. So they're allowed to, as you did in this case, challenge the cost. Customers are allowed to challenge the cost. Can FERC also say that it's not unjust and reasonable? In ultimately resolving that matter, would it decide whether it's unjust and unreasonable to include or not include the cost? Yes. So why isn't that also what happened here, even if this weren't a 206 proceeding? They said you cannot reduce, take out the cost for the non-Virginia customers. The Commission said more than that because the file rate, the tariff itself, which the Commission and Dominion are obligated to abide by, the file rate itself didn't provide for the split among the zones, in the zone between Virginia and North Carolina. This is a question of the cost, though, right? Yes. FERC can't say you can include these costs but not these costs? It could. The Commission could say you can include some and not others. However, I'm sorry, Your Honor. No, I said yes. However, because there is a file rate that has to be followed, the only way to say you can include those costs in a way that the Commission did is to change the file rate itself. And in order to do that, the Commission has to institute a Section 206. And it didn't change the file rate for you to challenge the cost? It would not have. For us to challenge the cost, had we been successful in the initial complaint where we said these cost inputs, the cost, the increment of undergranting costs, should not be allocated to wholesale customers, the Commission could have simply told Dominion, remove those cost inputs from your tariff. That would have been within the file rate. We specifically said in the complaint and in each order after that, that the Commission acknowledged as the Dominion and the Commission, we are not seeking to change the file rate. The only thing we ask is that those cost inputs be rejected from that year's annual update, and it would have been in subsequent years as well. That could have been done within the foreclosure. And why was it okay to say those costs should be excluded but not to say non-Virginia costs should be excluded, only non-Virginia costs should be excluded? Your request was to exclude all the costs. That's right. Why would it have not been okay to say, exclude the costs of undergrounding for non-Virginia customers? Because the tariff does not allow it. There's the merits of it, but in terms of the tariff, the tariff does not allow that. Dominion's tariff, which was the file rate, was allocated costs to all customers within the zone. There's no ability, there was no ability within that file rate to split costs between the zones. That's the reason the Commission had to direct Dominion to change the formula itself in order to affect the remedy that the Commission determined. And they did that without instituting a Section 206, which is required. Do you have a question? Thank you. Let me continue briefly. The Commission felt to make the requisite finding under Section 206 was sufficient to satisfy its burden, which is the discussion that we just had. The Commission also changed the scope of the proceeding without a reasoned explanation. That's the hearing order where the Commission said both amount and assignment is at issue, and then after an initial decision determined only the amount, not the assignment. The Commission said it meant a low ratio share allocation. Of course, the words low ratio share appear nowhere in the Commission's order. The Commission also said that somehow cost allocation is just shorthand for the amount of cost. Those are two totally separate determinations. There's a determination of the amount of cost at issue, which is just a calculation with some discharge rates and other adjustments. And then there's the assignment. And those are two different things. For the Commission to say that its hearing order was specifically directed at a hearing with respect to the appropriate amount of cost as well as the assignment. That makes sense. The Commission also unreasonably departed. So you're also way over time, but if you want a chance at rebuttal. Yes. Then you should wrap it up like in one sentence. The only other point was that the Commission unreasonably departed from its policy for rolling rates and creating what it called a limited exception. But Dominion itself and the NREDA in support of FERC has agreed there's nothing limited or unique about these circumstances. Thank you. Good morning. May it please the Court, Elizabeth Rylander for the Commission. In response to the many procedural arguments the Petitioner's Counsel raised, I would start by saying that the 2010 complaint ordering, which FERC allegedly failed to institute a Section 206 proceeding, is not in fact on review here. Okay, it's not in fact on review. It is not on review here. The four orders that are on review begin in 2014. But even if that order were on review, FERC did in fact institute a Section 206 proceeding. You're talking about the May 20, 2010 order? Yes, Your Honor. FERC did in fact institute an investigation into whether or not it included or excluded the costs, the incremental costs of underground construction. That was on Paragraph 1. That is in Paragraphs 1 and 34 to 35 of that order on J.A. Pages 5 through 7. Could you speak up a little louder? I'm so sorry, Your Honor. That's in Paragraphs 1 and 34 to 35 of that order at J.A. Pages 5-37 and 5-48 to 49. The Commission reaffirmed all those signings several different times, but most forcefully in a reserved issue order, rehearing order, Paragraph 76, J.A. Page 1178. And I believe that's what Your Honor pointed out earlier on. I guess I looked at the language at 5-37, and I believe 5-48 and 5-49 earlier. I didn't see where FERC says that this is a 206 proceeding in the sense of the distinction that's made in an opinion like the mid-continent independent systems operator from southern Indiana had cited. It seems like that they're supposed to be, especially given the fact that the complaint itself said, we're not challenging the formula rate. There was an explicit statement to that effect. How is there an explicit statement in the language that you cited that gives anyone notice that that's what's happening here? I believe the petitioner's argument that there wasn't an explicit statement is premised on the notion that because what upsets them is just the input to Deming's formula, that they can tell the Commission what to investigate. The protocol to which they refer in their briefing, which the Commission approved at 123 FERC, Paragraph 61098, do not limit the subject matter that a challenger to the rates can raise. It also doesn't limit the subject matter that the Commission can investigate. It would direct the Court's attention particularly to Paragraphs 45 to 47 of that case. Which of mid? Not mid-continent ISO. Which case? This is the Virginia Electric and Power Company order in which the formula rate protocols were first approved. What's the citation for that? 123 FERC, Paragraph 61098, and specifically Paragraph 45 to 47, where the Commission specifically declined to limit the subject matter that is available for challenge in response to a formula rate filing of this type. And also the Commission specifically responded to an argument that Deming's protocols were making an effort to limit FERC's authority. So to get back to your question, Judge Wilkins, FERC was not limited in what it could do under Section 206. All it had to say was we're instituting an investigation under Section 206, and that put the rate itself at issue. There was also plenty of procedure here. FERC ordered the parties to brief the issue in the settlement order according to what the parties themselves agreed to do. That's JAPH 556. And then after briefing, FERC found the Dominion rating question unjust and unreasonable as Section 206 required and instituted the replacement rate that allocated the cost between Virginia customers and North Carolina customers. Section 206 also required FERC to establish a just and reasonable rate. So I find it very difficult to accept the petitioner's argument that the Commission has not complied with Section 206 in this case. With those procedural obstacles passed, this is a transmission cost allocation case of the type that the Commission, of course, has seen many times before. No one disputes that these projects are upgrades to the industry transition grid. I'm afraid you moved past it so quickly I couldn't find the citation. I'm sorry, Your Honor. You cited a page at which what would need to be shown was set forth. What page was that in the Joint Appendix? I'm sorry. I'm not sure I'm understanding your question. Well, I'm not sure I'm understanding yours. All right. Let's go back. You said that at one point FERC told the parties what it expected them to present. Yes, Your Honor. Okay. What page was that? Okay. That was in paragraph six. What page? J.A. Oh, J.A. page 556. That's in an order that's In which paragraph? Paragraph 13, Your Honor. The parties themselves agreed to a briefing structure as they settled the rest of the case. Okay. 556 paragraph? J.A. page 556, paragraph 13. This is in a document titled Order Approving Uncontested Settlement? Yes, Your Honor. The parties settled the remainder of the case, but because the transmission cost allocation issue had been reserved for the Commission's own decision if they couldn't settle it and they didn't settle it, this order also ordered them to brief the cost allocation issue. To paragraph 13, you said? Yes, I would also direct the All that says establish a briefing schedule to address this issue. Which issue? So paragraph nine is perhaps a little more illustrative. Briefing procedures regarding the issue of rate treatment for the incremental cost of undergrounding the Garrisonville, Pleasant View, Hamilton, and DuPont-Sabros projects. And your point, I take it, is that by this time it had been clearly established that Virginia Electric regarded cost of undergrounding as a cost allocation issue in what I would have taken as the possible sense as, let us say, highly relevant to the formula rate. Yes, Your Honor, exactly. The cost of placing the project underground were relevant to citing the project as Virginia wanted to within the Commonwealth of Virginia. The Commission mentioned the citing issue in the reserved issue order, the hearing order, paragraph 31. Because these costs of placing the project underground were necessary for citing, they're considered part of the underground grid and, as Your Honor says, this then becomes the classical cost allocation page. A cost of upgrading the interstate transmission grid is properly decided and properly recovered under FERC jurisdictional rates. Yes, I mean, I anticipate an answer of the public saying that, oh no, reference to cost of undergrounding refers only to the inputs to the formula. Well, the costs of constructing and maintaining the grid here are inputs to the formula, I believe. And in any event, the Commission viewed them as properly incurred costs of citing the project. That's at page 1181. I'm sorry, where is the 1181 that we're interested in? That is the reserved issue order, recurring order. Just a second, slow down. We're on 1181? Yes, Your Honor. Where? Paragraph 31. Yeah. Projects were built underground according to Virginia priorities that affected the cost of citing the project. Well, this, yeah, this is on the merits. But can you explain to me how you see that as meeting the petitioner's procedural argument? Which procedural argument, Your Honor? I'm sorry.  The cost allocation that was before that commission didn't include cost allocation as embedded in the preexisting formula rate. I have to say, not a proposition that is intuitively inviting, but in a way that appears to be the client. So walking back to the very beginning of this case, Your Honor, when Dominion filed its inputs to the rate for the year 2010, it included these incremental costs of underground construction as a cost of developing the grid. Yeah. Those costs, because they're recoverable and for jurisdictional rates, would have been rolled into Dominion's transmission rates and spread to all of Dominion's users. Yeah. The petitioner's complaint is what brought this issue to the commission's attention at first. The Dominion's protocol actually required commission action, except that the petitioner's filed this challenge to it. So I would say I'm still not quite sure what the question is, but I will... Well, I'm not sure either. Okay. But at the outset, you cited a case, and I don't have a note on it, but I'm sure it can be found in the transcript, which you presented as saying that under the Virginia Electric protocol, when a claim such as petitioner's filed was filed, that would bring up questions with respect to the formula rate itself, as well as the actual inputs under the formula rate. Okay. Did I get that right? Yes, Your Honor. I think I understand the question now. As Petitioner's Counsel is explaining, normally speaking, the rate update is a ministerial filing made annually. Commission action, the protocols, which are part of the tariff, do not require commission action on it. Right. But they do permit an interested party to challenge the input, and they permit the commission under Federal Power Act Section 206. Petitioners have cited some cases... Commission input, not merely with respect to the compilation of the application of the formula, but the character of the formula. Yes, Your Honor. Okay. And the case you cited, the commission case that you cited at the outset, will tell us all about that? Yes, it will, Your Honor. That, again, is 123 FERC, Paragraph 61098. 123, yes. And I... Paragraphs what? 45 to 47 are particularly relevant. Oh, but something is missing here. 123 FERC, but then the... Oh. Case? 61098. 61098. What that case makes clear is that the protocols do not limit what petitioners can challenge, and they don't limit what the commission can do under Section 206. The petitioners are trying very hard to say that because they didn't raise the issue of the formula itself, the commission can't consider it. But there's no basis for that argument in Dominion's protocols, which are not in the record of this case. And the commission's order approving those protocols explains that it contemplates the Section 206 challenge and contemplates the possibility that the commission might change the rate. And where is this? The joint appendix, if it is in the joint appendix. It is not in the joint appendix. Okay. Where is it? It is in the case I just cited to you. Oh, that very case? Yes. Oh, okay. Again, paragraphs 45 to 47, I think, are most relevant. Right. I got that. But the upshot, Your Honor, is that the petitioners do not control, in this case, what FERC can look at and what FERC can do. They raise the question of who should be responsible for paying the cost of underground construction. And what FERC found in examining their complaint was that the cost allocation that would normally occur under Dominion's tariff was not reflective of how the benefits of underground construction were distributed. At that point, Your Honor, we get to what you just described, the classical transmission cost allocation case. I get it. I think. Okay. And if I could just take a minute to wrap up. I see I'm over my time as well. All the commission needs to do in order to allocate transmission costs is to match those costs to benefits, and it does not need to do so precisely. The record here shows benefits of underground construction accruing in Virginia, but there was no showing that they accrued in North Carolina. So FERC made a reasonable exception to its cost allocation policy for these projects. When FERC made that finding, who had the burden of proof, and what was the burden of proof? Dominion initially had the burden of proof to justify its costs. But once the commission instituted Section 206 investigation, it was the commission's responsibility to examine the rate and to send a new one. Okay. So the commission had the burden of proof at that point? I'm not understanding. It was the commission's responsibility. Burden of proof is not the way I think of it, Your Honor. Because the commission was conducting the investigation, it was for the commission to determine how the costs and the benefits lined up. FERC made a reasoned decision based on the evidence that all the parties submitted in this case to keep these costs within Virginia. And to get back to questions that Judge Garland was asking earlier. Can I just go back to this burden of proof issue? Because the source that you rely on to say that the Section 206, there was no procedural defect here with the Section 206 preceding that 123 FERC 61098 paragraphs 25-47. Paragraph 47 speaks to burden of proof. And then it says in paragraph 47 that Virginia Power continues to bear the burden of demonstrating the justness and reasonableness of the rate resulting from its application of the formula. And then it says in any complaint or proceeding initiated sui sponte by FERC challenging a true adjustment of material accounting change, Virginia Power shall bear the burden of proving that it has reasonably accounted that. So which, I guess if you're saying that that's not what this is, where in paragraphs 45-47 does it say who has the burden? Or are you saying that we shouldn't care about that? I'm not saying the court shouldn't care, no. As Your Honor's pointing out, in a rate adjustment case of this sort, the burden does start with Dominion to establish where its costs come from. That is because in many cases a challenger doesn't necessarily know what Dominion's data looks like and won't have enough evidence to show the Commission that something's not right here. But because the Commission itself instituted the investigation into the rate, I think that goes a little beyond what paragraph 47 contemplates. So I'm not sure I would say the burden is necessarily just on Dominion here. Well, who else would it be on? Well, let me just ask this question. In this proceeding, did FERC put the burden on Dominion to establish the justness and reasonableness of the new formula rate? Of the new formula rate, reallocating the costs? Yes. I would not say FERC put that burden on Dominion, no. Why isn't that wrong? Why isn't that a narrative? Why isn't that a basis for remand? Dominion did submit a significant amount of evidence concerning the benefits of the lines. That evidence pertained mostly to Virginia. But there were other factors. There were many other factors at play. And again, the Commission itself instituted the investigation into the rate. Steven, we can just go back a moment. What is the length? Well, I'm sorry, you haven't fully answered just yet. I'll let you continue. But I would like an answer, yes or no, was it right or wrong? You seem to be saying that Dominion was never forced to carry the burden. Is that what you're saying? Let's get that clear first. Dominion, like all the other parties, Dominion did have to explain the basis of the cost inputs. It had to show why it incurred these costs for underground construction. And it had to show the Commission who benefited, which it did. The Commission discussed that evidence. And in terms of defending its prior rate in which the costs were distributed to all Dominion's customers in Virginia and North Carolina, certainly the issue was discussed in the briefing. But I'm not sure that Dominion, the proponent of the change has to justify the rate, has to justify the change. And in this case, the Commission found... That sure wouldn't have been these petitioners, right? So, yes, Your Honor, Dominion had to justify the cost inputs. The Commission found that the petitioners had not demonstrated that there were benefits in North Carolina. I'm sorry, in sort of seizing command of the issue from Virginia Electric, didn't the Commission assume the burden under 206 of showing the unjustice and unreasonableness of pre-existing rates? Yes, Your Honor, I would say it did. But certainly it accepted inputs from all parties. And at one point it did say that the petitioners had not shown that their favorite allocation was just unreasonable. I guess what I'm, you know, as a recovering trial lawyer here, I'm always interested in who has the burden and what is the burden. Yes, Your Honor. And whether the burdens were adequately carried out or performed. And so I guess if I accept the proposition that the Commission has the burden... Yes, Your Honor. Where is it in any of these orders where the Commission says that, that it's taking on that burden, and that it didn't place the burden on the petitioners to demonstrate that the new formula, CARA, is not just unreasonable? And part of my struggle to answer Your Honor's question has been that there were many suggestions made throughout this. But the Commission said in that very first order from 2010, the complaint order, that whether to include or exclude the cost of underground construction was not specifically set for hearing, but reserved for Commission determination if the parties couldn't settle it. So the Commission itself wanted to make that decision. And then following briefing in the reserved issue order, the Commission found it was not just unreasonable to allocate costs to customers outside Virginia, which is what would have occurred under Dominion's pre-existing rate. So it's less the Commission saying we hereby take on the burden as following its own 206 procedures and following what is laid out in the Federal Power Act. Once it's instituted an investigation and found a rate unjust and unreasonable, then the Commission has to set a just and reasonable replacement. I guess I'm just confused because if I, as a judge, am having a bench trial and I find that something is just and reasonable or not, that's a finding. That doesn't mean that I, as the decision maker, took on any burden. The plaintiff might have that burden, the respondent might have that burden. I'm just making a finding. Yes, Your Honor. And with part of this, I mean, that's, I guess, with this basic notice challenge, I mean, that's one of the reasons why you want to have clear notice and procedures so that we know up front who has the burden to do what. It doesn't really seem like an answer to me to say that, well, the Commission is taking this over and it has the burden. It just doesn't seem to be that that's the way that this works or that that's what necessarily happened here. But tell me what I'm missing. Well, there was notice. There was notice. The complaint itself put the public on notice that the issue of underground construction contracts was before the Commission. That's in the reserve issue of order, recurring order, at paragraph 26. And the Commission issued a notice of complaint, which is a JA 534. And then, as discussed earlier in the argument, the Commission's rejection of concurrent filing from Dominion that would have assigned a cost under Section 205 placed everybody on further notice that the Commission was considering the issue of the rate. Well, I think we're kind of going in circles here. Can I go back to 123, FERC, et cetera, paragraphs 45 and 47? Looking at those, I'm guessing that the sentence on which you rely for the key proposition, which is that they challenge on the input to the formula rate, if so facto raises the legitimacy of the formula rate, is in the first sentence of paragraph 46. I'm sorry, second sentence. In order for formula rates to work properly, they must allow for accurate corrections and updates. And I take it you're saying that means updates to the formula. Yes, Your Honor. I will say, though, I was focused on a different sentence. What's your sentence? Okay. Mine's in paragraph 45. Yes. In which the Commission found that several parties were concerned that the proposed tariff language limits the parties and the Commission's rights to initiate a Section 206 proceeding. And while the Commission doesn't object to the utility's efforts to resolve matters with its customers before resorting to a complaint, like we see here, that process does not impact the rights of any party. So while informal efforts to resolve rate disputes are acceptable, there can be no limit to formal efforts like this one. The petitioners have argued in the cases cited on page 6 of their reply brief that a formal challenge, which they use as a term of art, limits what the Commission is able to do. But that is very much not the case here. The cases they cite are distinguishable because they involve different rate schedules and because the Commission here has expressly not limited subject matter that can be challenged. What is the sentence in paragraph, I'm sorry, which was it, 45? 45. That you're especially calling our attention to. Third sentence. Unfortunately, it's not showing up on my screen right now. Third sentence. Here it is. Yes, I've got it. I've got 45. That process may not impact the rights of any party withstanding to bring a complaint. And the Commission also refers to its own right in the first sentence of that paragraph to initiate a Section 206 proceeding. I guess saying that it doesn't impact the rights of any party to bring a complaint, I mean, how does that tell you that if you bring a 206 complaint challenging cost allocation that that necessarily includes, you're necessarily opening the door for the Commission to look at the actual formula rate. I just don't see how this language does that much work for you in that regard. Again, Your Honor, in examining the inputs to a rate, and particularly in a cost allocation setting as we are here, FERC needs to ensure that the rate is working properly, as in that sentence that Judge Williams pointed out. And because here we're talking about cost allocation, FERC needs to match cost to benefits.  What does that mean? Intuitively, that seems absolutely clear and obvious. We have a claim to the contrary here. Cost allocation does not mean allocation of cost. And what I would like is a sentence you could point me to, affirming the cost allocation in terms of this allocation of costs, both in terms of inputs to a formula and the nature of the formula itself. Okay. So, is Your Honor asking about the scope of hearing question, in which the positioners say this costs everything and doesn't mean allocation of cost? The claim is that the hearing was absolutely limited to inputs to the formula, and in no way, not respecting, not regarding anything that's happened in the course of it, in no way properly addressing the allocation of costs under the formula, within the formula. Mm-hmm. What the first few paragraphs of the reserved issue order explain, Your Honor, is that the complainants have not shown that it's just and reasonable for wholesale transmission customers outside Virginia to pay for the cost of underground construction, and then that the Commission has determined itself that based on the facts of this case, wholesale customers in Virginia should not be responsible for the... Yeah, I think you're describing what happened in this case. Yes, Your Honor. And in terms of ordinary English, that seems to me not only correct, but consistent with the other papers in this case. Yes, Your Honor. But we have this claim that cost allocation doesn't mean allocation of costs to the extent that that involves an inquiry into the formula. The Commission reserves that issue for the issue of cost allocation for its own determination, which did involve looking at the formula. The petitioners are attempting to parse the Commission's language to get this issue into hearing, but the Commission said several times, several different ways, this is not a factual question. This is a question of Commission precedent and policy, and we can decide it based on the written record. So I agree with Your Honor. I'm not sure. I don't see inconsistency in the Commission's orders that would suggest that cost allocation meant anything other than a determination of who is responsible for the cost of underground construction. And that is explained clearly in the first few paragraphs of the discussion on J.A. pages 850 and 851, which I think at this point we've argued about a great deal. Okay. Thank you. The intervener has four minutes. Thank you, Your Honor. May it please the Court, Christopher Jones for the interveners. If I could pick up, Judge Williams, with your last question. I think there's an important historical, for record, fact missing from that colloquy with the Commission's counsel, which is there are two separate tracks. The allocation issue was briefed in 2012 that led to the reserved issue order. So when counsel for petitioners say that they didn't have their day in court, that's, in our view, just not true. The issue was extensive. The allocation issue was extensively briefed. In fact, their brief at Jail and Court Appendix 592 frames the issue as an allocation issue. Well, but now they're saying that allocation just means shuffling around costs within the preexisting formula and that no question can be considered in this procedural context about the legitimacy of the formula. Right. And that's, I think, clearly at odds with the entire scope of the proceeding, Your Honor. The Commission identified two specific issues. One is how much of these costs, should the total cost be reduced through the rate? And on that issue, Your Honor, they had a hearing before the administrative law judge. The allocation issue, as between customer classes, and in this case, Virginia and North Carolina, the Commission reserved for itself in 2010 explicitly opening a Section 206 investigation in its complaint order where it said, whereas here, we institute an investigation under Section 206. And in the issue, the refund effective date that counsel for petitioners said was missing. I'm not sure where that argument comes from. The Commission in its first order. It was not present in the May 20, 2010 order, but it is present in the October 2010 order. That's correct, Your Honor. And the October order is the first order on the complaint that was filed, not on our Section 205 file. So, again, the issue on allocation was severed and separately briefed. The Commission reserved it for itself, not withstanding repeated attempts to cram it into the evidentiary hearing that was held on the total cost issue. If I may, Judge Wilkins, go back as well to your reference to the Mid-Continent case. We also have a little historical glitch in the record here. The Commission's norms on formula rates and what's expected of a complainant have evolved over time. The 2014 Mid-Continent case is four years after this complaint was filed, when the Commission effectively reset the norms for what would be expected of a complainant challenging the formula rate. And so, if you read that case, what you'll see is a customer group saying, it's not fair to make us file a Section 206 complaint to challenge a formula update. And the Commission said, you're right. You should file something else called a formal challenge. That norm, that distinction did not exist in 2010, did not exist in Dominion's protocols, and did not exist in the record of the case because the complaint expressly says, we are filing a Section 206 complaint. We ask for all the trappings of a Section 206 complaint, including refund protection under Section 206B. The Commission noticed it as a complaint and throughout the proceeding referred to it as such. So, again, I just want to put that Mid-Continent case in some historical perspective because the Commission did reset its norms for what's expected over time. I think the last issue I would raise, again, for purposes of, well, I see I'm getting close. I would just point to Joint Appendix 52, where the complaint asks for, quote, the earliest possible refund effective date, and Joint Appendix 549 is where the Commission makes an explicit reference to instituting a Section 206 investigation. What document is 549? 549, Your Honor, I believe is the order on reserve issue. I'm sorry, I misspoke, Your Honor. 549 is the complaint order. That's the 2010 complaint order. And what paragraph are you talking about, mentioning the investigation? That's Paragraph 36, and I'll just read briefly. It says, in cases where, as here, the Commission institutes an investigation on complaint under Section 206 of the FDA, Section 206B requires that the Commission establish a refund effective date that is no earlier than the date the complaint was filed, but no later than five months after. Your Honor, that is the well-understood norms of a Section 206 complaint. It's not clear to us, based on that demonstration, how the October order could have been interpreted as something other than opening up the entire rate for investigation. Okay, thank you. Thank you. All right, we'll let everybody go over, so we'll let you go over and over. Two minutes, please. Thank you, Your Honor. I'll be brief. Could you start by identifying some first case or other case that establishes that acquisition, in other words, cost allocation, do not encompass the allocation of costs, even to the extent that that may involve considering the use of a formula? Your Honor, I would point back to the MISO case that Judge Wilkins asked about, where the Commission distinguished between, in the context of a formula rate, the Commission makes a distinction between a formal challenge to that formula rate versus a complaint seeking to change the formula itself. You can have a distinction, but you can have a proceeding that's on both sides of the distinction. The Commission has said, in order to challenge the formula itself, you have to have a Section 206 investigation into the formula. What we're complaining about is the Commission never initiated a Section 206 review. That's because of your reading of the words cost allocation. Your Honor, with all due respect, it's because nowhere in any of the Commission's orders did it institute a Section 206 proceeding into the formula. What's wrong? That's because of your reading of that sentence in paragraph 18 of the May 2010 order. If the Commission instituted an investigation into the formula itself, it would have established a refund effective date. Well, it did establish that in October 2010. Yes, for that portion of the complaint. What the Commission established a refund effective date for was the formal challenge that was filed with the Commission by complainant. That 205—excuse me, formal challenge under Section 206 was a challenge to the cost input, which the Commission has said both in the— You're saying that the words of the October 2010 order did not encompass the issues put on the table by the May 2010 order? They did not, Your Honor. And you know that because what? The only thing that was at issue before the Commission in the order on reserved issue and in the order on the complaint was the formal challenge where the complainant argued that the cost inputs to the formula were unjust and unreasonable because they included the incremental under-referral. According to your say-so, what do we have to back that up? We have the Commission's order where it instituted an—it reserved for itself this issue and in saying this issue, it referred back to the formal challenge to the cost inputs into the rate and then when the Commission issued its order on reserved issue directing the split of allocation and adhering— You're talking about in the context where Virginia Electric has tried to preserve its rates by filing a 205 filing and the Commission commandeers that proceeding and turns it into a 206 proceeding with the claim—let me think— with the claim that that will resolve whatever—or can resolve, that Virginia Electric can resolve whatever it needs to resolve in this proceeding. And the vehicle for the Commission to commandeer the proceeding into an investigation into the formula is to initiate a section 206 proceeding, which it simply did not do. What about the words it says when the Commission institutes a 206 proceeding as it did here? Yes. In that portion, Your Honor, the Commission was referring back to— where it says whereas here the Commission institutes an investigation on a section 206 complaint, that is a 206—that is a refund effective date established on the 206, which was the formula challenge, which the Commission has said— How do you know that's what—how do you know that that's what the Commission does? It's two separate provisions of the Federal Power Act section 206. So section 206 has different refund effective dates based on, one, whether it's a complaint pursuant to section 206 or the Commission acting on its own initiative. Where the Commission sets a refund effective date of the date of the complaint, that can only be when the Commission's acting on a third-party complaint, which is what the formula challenge was in this proceeding, limited only to the cost input. They cite section 206B. Yes, Your Honor. Doesn't 206B apply whether it's a challenge under the protocol the same as if it's a challenge to the formula rate? In terms of the refund effective date, Judge Wilkins, it does, except that 206B is how we know that the Commission never instituted an investigation on its own, because when the Commission is instituting an investigation on its own, the refund effective date cannot be the same as the date of the filing of the complaint. It's on the date the Commission publishes notice of the complaint, which was never done in this proceeding. So that refund effective date provision in 206B is how we have proof that the Commission never instituted 206 into the formula itself. And what's the authority for that proposition, that this couldn't be the refund effective date for a Commission-initiated complaint? In the statute itself, there's two different provisions. I realize I'm going over, but if I could answer the question. There's two different provisions. One is under 206B, it's when the Commission institutes the proceeding under this section, it establishes a refund effective date that is no earlier than the date of the complaint. That's when the Commission acts on a 206 complaint that was filed. And then it goes on. In the case of a proceeding instituted by the Commission on its own motion, the refund effective date shall not be earlier than the date of the publication by the Commission of notice of its intention to initiate such proceeding, nor later than five months after the publication date. That never happened. So the only refund effective date that the Commission established in the proceeding below was the date of the complaint, which all parties acknowledged was about the cost input into the formula rate, not about the formula rate itself. If I could, I wanted to just answer very briefly Your Honor's Judge Wilkins' question about the burden of proof. And it's at JA1099, and that's an excerpt from the initial decision in the proceeding below. But the presiding judge summarized there the burden of proof and stated, I quote, at paragraph 18, all participants, including Dominion, acknowledge that Dominion bears the burden of proof of reasonableness as to the amount of incremental undergrounding costs. And it goes to that entity for the burden of proof with respect to the cost input. And the judge goes on and continues, and I won't read it given the time, but at footnote 54 of that initial decision, the presiding judge cites the same Virginia Electric and Power Company case that Your Honor's discussed with her counsel, and the same paragraph, paragraph 47. So that proceeding makes it clear that Dominion bears the burden of proof with respect to the cost input. And the judge cites at paragraph 19, page JA1100, the commission's order approving Dominion's formula rate in this case is explicit. It clearly places the burden of proof of justice and reasonableness burden and challenges to the amount of costs on Dominion. If Your Honor's had no further questions, I realize I'm over yet again. Okay. We'll take them out of our submission, and we'll take a brief recess while the next group of lawyers comes up. Thank you.
judges: Garland, Wilkins, Williams